IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID PITLOR,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CHARLES SCHWAB CORPORATION,<br><br>　　　　　　　Defendant. | 8:19CV95<br><br>MEMORANDUM AND ORDER |

This matter is before the court on Defendant's Motion to Compel Arbitration and Stay Proceedings. ([Filing No. 10](#)). For the reasons stated below, Defendant's motion will be granted.

BACKGROUND

The above-captioned case is Plaintiff's second lawsuit against Charles Schwab Corporation ("Schwab"). On June 13, 2018, the court ruled that Plaintiff's first lawsuit, <u>David Pitlor v. Charles Schwab Corporation</u>, 8:18CV196, must be submitted to arbitration. (8:18CV196, [Filing No. 26](#)).

As of March 11, 2019, David Pitlor ("Pitlor") had not filed a Statement of Claim or any other document initiating arbitration with FINRA. (8:18CV196, [Filing No. 36](#)). Instead, on March 5, 2019, he filed the above-captioned case.

As with the prior lawsuit, Plaintiff claims that after he opened a Schwab brokerage account, Schwab unlawfully removed funds from Plaintiff's accounts and altered records to conceal any evidence of this misconduct. Plaintiff alleges claims for breach of contract, fraudulent misrepresentation and/or concealment,

and negligent misrepresentation. Pitlor alleges Defendant violated the Electronic Funds Transfer Act and federal usury law, and it erroneously debited his account, engaged in erroneous accounting methods, wrongfully froze and closed his account, and committed fraud by concealing or misrepresenting its conduct in mishandling Plaintiff's assets. (Filing No. 1). Defendant again moves to compel arbitration of Plaintiff's claims.

By completing the online Schwab One Account Application ("Application Agreement") to open his account, Pitlor agreed to be bound by the Schwab One Account Agreement ("Account Agreement"). (Filing No. 12-1, at CM/ECF pp. 3-4). The Account Agreement and Application Agreement between Pitlor and Schwab contain an identical arbitration clause which provides, in relevant part:

> Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided by Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers ("Related Third Parties"), including any controversy over the arbitrability of a dispute, will be settled by arbitration. . . .
>
> . . . .
>
> Such arbitration will be conducted by, and according to the securities arbitration rules and regulations then in effect of, the Financial Industry Regulatory Authority (FINRA) or any national securities exchange that provides a forum for the arbitration of disputes, provided that Schwab is a member of such national securities exchange at the time the arbitration is initiated. Any party may initiate arbitration by filing a written claim with FINRA or such eligible national securities exchange.

(Filing No. 12-2 at CM/ECF pp. 12–13.; Filing No. 12-3 at CM/ECF p. 58). Under the Account Agreement, the parties agreed to "giv[e] up [the] right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." (Filing No. 12-3 at CM/ECF p. 57). Finally, the Account Agreement stated that the "arbitration agreement . . . [would] survive the closure of [the] Account and/or the termination of services rendered under this Agreement." (Filing No. 12-3 at CM/ECF p. 58).

ANALYSIS

Arbitration is favored. This court's role is to engage in a limited inquiry to "determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001). If the court so finds, Section 3 of the FAA requires a stay of proceedings subject to an arbitration agreement, and Section 4 empowers the court to compel the parties to proceed with arbitration. 9 U.S.C. §§ 3, 4. "The party resisting arbitration bears the burden of demonstrating the motion to compel arbitration should be denied." Green Tree Financial Corp. -Alabama v. Randolph, 531 U.S. 79, 91 (2000).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." AT & T Technologies v. Communications Workers of Am., 475 U.S. 643, 648 (1986); Volt Information Sciences v. Board of Trustees, 489 U.S. 468, 479 (1989) (stating Arbitration is "a matter of consent, not coercion." Accordingly, if a party has not "agreed to arbitrate, the courts have no authority to mandate that they do so."); see also Churchill Environmental and Indus. Equity Partners, L.P. v Ernst & Young,

3

L.L.P., 643 N.W.2d 333, 336 (Minn. Ct. App. 2002) (citing AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 242 F.3d 780, 782 (8th Cir. 2001)). When deciding whether to compel arbitration, a two-part test is applied. USW, AFL-CIO-CLC v. Duluth Clinic, Ltd., 413 F.3d 786, 788 (8th Cir. 2005). The court must first decide whether a valid agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). If so, the court must then determine if the parties' dispute falls within the scope of the arbitration agreement. AT & T Technologies, 475 U.S. at 649. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." USW, 413 F.3d at 788 (citing United Steelworkers of Am. V. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960)).

Pitlor does not contest "the validity of the arbitration agreement at the time the contract was incepted" and he does not disagree with Defendant's "descriptions of the facts and circumstances relating to the formation of the original contractual agreement . . . ." Instead, Pitlor argues the arbitration provisions are unenforceable because arbitration is contrary to the congressional intent and resolution procedures of the Electronic Funds Transfer Act; that an arbitration forum has no authority to decide claims for recovery under the EFTA. (Filing No. 15, at CM/ECF pp. 1-2, 6-7). He further claims the arbitration agreement must be revoked due to Defendant's violations of the EFTA. (Filing No. 15, at CM/ECF p. 12).

Pursuant to the EFTA,

Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any

> other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

15 U.S.C. § 1693m(g).

> No writing or agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by [the EFTA]. Nothing in this section prohibits, however, any writing or other agreement which grants to a consumer a more extensive right or remedy or greater protection than contained in this subchapter or a waiver given in settlement of a dispute or action.

15 U.S.C. § 1693l.

Pitlor may be arguing that under these sections, he is entitled to a federal court forum and to the extent an arbitration agreement would divest him of that right, the agreement is unenforceable. But § 1693l "speaks to the non-waiver of substantive rights and remedies afforded by the EFTA. Since the ability to bring an EFTA claim in a federal district court is not a substantive right or remedy, the anti-waiver provision in § 1693l does not apply." Howse v. DirecTV, LLC, 221 F. Supp. 3d 1339, 1345 (M.D. Fla. 2016) ("EFTA did not preclude arbitration. . . ."). Moreover, nothing in the language of the EFTA suggests such claims must be resolved in the federal courts and there is no language precluding arbitration. Absent specific language prohibiting arbitration of EFTA claims, arbitration remains a viable option for resolution of such clams. "Where Congress knows how to say something but chooses not to, its silence is controlling." Howse, 221 F. Supp. 3d at 1346 (quoting Animal Legal Def. Fund v. U.S. Dep't of Agric., 789 F.3d 1206, 1217 (11th Cir. 2015)).

Consistent with Howse, and the cases cited therein and in Defendant's briefs, this court concludes EFTA claims are arbitrable. See e.g., Johnson v. W. Suburban Bank, 225 F.3d 366, 378–79 (3d Cir. 2000) (holding claims arising under the EFTA may be subject to arbitration); Williams v. Champs Auto Sales, Inc., No. 14–cv–12866, 2014 WL 6886546, at *2 (E.D. Mich. Dec. 4, 2014) ("EFTA claims may be subject to mandatory arbitration."); Byrd v. SunTrust Bank, No. 2:12–cv–02314–JPM–CGC, 2013 WL 3816714, at *15 (W.D. Tenn. July 22, 2013) (holding that pursuant to the parties' arbitration agreement, EFTA claims should be arbitrated); Guadagno v. E*Trade Bank, 592 F.Supp.2d 1263, 1272 (C.D. Cal. 2008) ("Claims for violation of the EFTA. . . are arbitrable."); Novak v. JP Morgan Chase Bank, N.A., No. 06–14862, 2008 WL 907380, at *1, 9 (E.D. Mich. Mar. 31, 2008) ("[C]laims under the EFTA are not exempt from arbitration.").

Plaintiff argues "Defendant's violations of the EFTA [sic] of a nature such that Plaintiff's rights will be waived if adjudicated via arbitration, and thus revocation of the arbitration agreement is justified." (Filing No. 15, at CM/ECF p. 2). Plaintiff cites no law supporting this argument, and the court finds the argument is wholly circular and lacks merit. Having concluded the EFTA claim is subject to arbitration, this court is not free to first decide that claim as a basis for revoking the arbitration agreement.

IT IS ORDERED:

1) Defendant's Motion to Compel Arbitration, (Filing No. 10), is granted, and

    a. The parties are ordered to proceed to arbitration;

    b. This case is stayed in this forum pending arbitration;

c. Beginning on September 12, 2019, and every 90 days thereafter, the parties shall file a joint status report regarding the progress of the arbitration proceedings;

d. The Clerk of the United States District Court for the District of Nebraska shall close this case for statistical purposes;

e. The Clerk shall set an initial Status Report Deadline of September 12, 2019.

May 10, 2019.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge